IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| W. GRAHAM ARADER | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 11-3626 |
| VALENTIN I. DIMITROV, in his capacity | : | |
| as Personal Representative of the | : | |
| Estate of John E. Du Pont, Deceased et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                            **OCTOBER 7, 2011**

Presently before the Court are Defendants, Valentin I. Dimitrov, as Personal Representative of the Estate of John E. Du Pont, Deceased ("Dimitrov"), Taras M. Wochok, as co-trustee of the John E. Du Pont Deed of Trust ("Wochok"), and Diane Hazen Brady, individually and as co-trustee of the John E. Du Pont Deed of Trust's ("Brady") (collectively, "Defendants"), Motion to Dismiss the Complaint submitted by Plaintiff, W. Graham Arader ("Plaintiff"). For the following reasons, Defendants' motion will be granted.

**I.      FACTS**

Plaintiff owns an art gallery in New York and sells rare books, photographic plates, and like items and materials on a consignment basis. (Compl. ¶ 4.) John E. Du Pont ("Du Pont") was a billionaire and a member of the prominent Du Pont family. (Id. ¶ 6.) Defendant, Dimitrov, is the personal representative of Du Pont's Estate, which was probated on January 18, 2011 in the Delaware County Register of Wills. (Id. ¶ 7.) Defendants Wochok and Brady are co-

trustees of Du Pont's Deed of Trust, dated April 6, 1984, as amended ("Trust") with a business address in Paoli, Pennsylvania. (Id. ¶ 8.) Du Pont was also a co-trustee until his death. (Id. ¶ 9.) In 1996, Du Pont shot and killed Olympic gold medal wrestler Dave Schultz on his 800 acre estate in Delaware County, Pennsylvania. (Id.) In 1997 Du Pont was convicted of third degree murder and sentenced to 13-40 years in prison. (Id.) Du Pont died while incarcerated on December 9, 2010. (Id.)[1]

Plaintiff alleges that, in the 1980's he and Du Pont had a business relationship whereby Du Pont consigned rare books, watercolors, and plates to Plaintiff for sale at his art gallery. (Id. ¶ 10.) Plaintiff further alleges that the business relationship between Du Pont and himself ended in the late 1980's. According to Plaintiff, in 2005, nine years after Du Pont was incarcerated and fifteen years after Plaintiff and Du Pont terminated their business relationship, Du Pont and Wochok contacted Plaintiff and demanded payment for the value of certain consigned goods. (Id. ¶ 13.) Plaintiff informed Du Pont and Wochok that he had either returned the consigned goods to Du Pont or had paid Du Pont for such goods prior to Du Pont's imprisonment in 1996. (Id. ¶ 14.) Plaintiff's position is that Du Pont and the Defendants demanded payment knowing that their demand was grossly untimely. (Id. ¶ 15.)

### A.    The State Court Action

On September 4, 2007, three individuals filed a two-count complaint against Plaintiff in the Delaware County Action: (1) Du Pont, both in his individual capacity and in his capacity as co-trustee of the Trust; (2) Wochok, in his capacity as co-trustee of the Trust; and (3) Brady in

---

[1] Du Pont's estate was probated on January 18, 2011, in the Delaware County Register of Wills. Defendant Valentin I. Dimitrov is the personal representative of the estate. (Compl. ¶ 7.)

her capacity as co-trustee of the Trust (collectively, "Du Pont parties"). (Id. ¶ 18.) The Du Pont parties claimed that Plaintiff committed the tort of conversion and that he was unjustly enriched by failing to pay Du Pont for the goods. (Id. ¶¶ 20-21.) Plaintiff alleges that these actions have statutes of limitations of two and four years, respectively. (Id.)

Plaintiff alleges that, despite the fact that the statute of limitations for both counts had well expired, he was forced to defend the Delaware County Action through defense counsel throughout all phases of the litigation. (Id. ¶ 23.) On August 28, 2008, Plaintiff filed a motion for summary judgment on the grounds that the Du Pont parties' claims were barred by the statute of limitations. (Defs.'s Mot. Summ. J., Ex. A at 2.) On October 24, 2008, the Honorable George A. Pagano denied the motion without opinion. On July 23, 2010, after a bench trial, before the Honorable James. F. Proud, the court entered a verdict in favor of Plaintiff on the merits of the claims and on the statute of limitations issue. (Id., Ex. D at 1-2.) The Du Pont parties then appealed to the Pennsylvania Superior Court without first filing post-trial motions, resulting in the trial court quashing the appeal on September 28, 2010. (Compl. ¶ 25.) The trial court granted the Du Pont parties leave to file untimely post-trial motions, including a motion for reconsideration on the statute of limitations issue, but then denied them. (Id. ¶ 26; Defs.' Mot. Summ. J., Ex. E at 2.) The Du Pont parties then appealed the court's denial of their motion for reconsideration on the statute of limitations issue. (Defs.' Mot. Summ. J., Ex. E at 2-3.) On January 28, 2011, the court issued an opinion holding that both counts in the Complaint were time-barred because the last contact between the parties was found to have been in 1986. (Id.) Accordingly, the court opined that the Du Pont parties were required to bring their claim for conversion by 1988 and their claim for unjust enrichment by 1990. (Id. at 3.) On March 18,

2011, the Du Pont parties voluntarily discontinued their Superior Court appeal. (Compl. ¶ 29.) Plaintiff alleges, here, that, between 2007 and 2011, he was forced to expend $46,221.67 in fees and costs to defend the action brought against him in Delaware County. (Id. ¶ 38.)

### B. The Federal Court Action

On June 3, 2011, Plaintiff filed the subject Complaint comprised of a single count for wrongful use of civil proceedings. Therein, Plaintiff alleges that the Defendants[2] wrongfully instituted civil proceedings against him in the Delaware County Court of Common Pleas because they knew that the statute of limitations had expired. On August 5, 2011, the Defendants filed the instant Motion to Dismiss arguing that Plaintiff has failed to state a claim as a matter of law because there were genuine factual and legal questions relating to when the business relationship between Du Pont and Arader terminated. In support of this contention, the Defendants reference Plaintiff's inability to produce inventory lists, receipts, or documentation showing that Plaintiff made payment to Du Pont. The Defendants also cite to Maloney v. Madrid Motor Corp., 122 A.2d 694 (Pa. 1956), which, they allege, stands for the proposition that the termination of an oral consignment contract must be clear and unambiguous. According to the Defendants, Maloney supports their position that they had "probable cause"[3] to believe that the statute of limitations for both claims did not begin to run until 2005 as did the state court's denial of Plaintiff's motion for summary judgment. The Defendants further argue that Plaintiff's claim fails as a matter of law

---

[2] From here forward, we will refer to the "Du Pont parties" and the "Defendants" will be referred to as the "Defendants." The term accounts for Valentin I. Dimitrov's presence in this suit and Du Pont's death.

[3] As we will explain, *infra*, whether the plaintiffs in the underlying action had "probable cause" to bring the action is an element of a claim for wrongful use of civil proceedings.

because he cannot prove that the primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of the parties or adjudication of the claim on which the proceedings were based.  (Defs.' Mot. to Dismiss Br. at 6.)

On the other hand, Plaintiff argues that his business relationship with Du Pont terminated in the 1980's and that the law is clear that the statute of limitations for conversion and unjust enrichment began to run at the time Plaintiff received the goods in 1986.  Moreover, Plaintiff argues that improper purpose may be inferred from a lack of "probable cause."  Finally, Plaintiff argues that the state court's denial of his summary judgment motion is not conclusive evidence that the suit was supported by probable cause.

## II.    STANDARDS OF REVIEW

### A.    Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. 544, 555 (2007).  Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Moreover, "it is no longer sufficient to allege mere elements of a cause of

action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8).  Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Twombly, 550 U.S. at 555).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556).

Notwithstanding Twombly, the basic tenets of the Rule 12(b)(6) have not changed. The Knit With v. Knitting Fever, Inc., No. 08-4221, 2009 U.S. Dist. LEXIS 30230, at *6 (E.D. Pa. Apr. 8, 2009).  The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations.  Phillips, 515 F.3d at 231.  Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff.  Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

### B. Wrongful Use of Civil Proceedings

The Pennsylvania legislature codified the common law action for wrongful use of civil proceedings at 42 Pa. C.S. § 8351(a). The statute provides, in relevant part:

> (a) Elements of action.–A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful

> use of civil proceedings [if]:
>
> (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
>
> (2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa. C.S. § 8351. The statute is also referred to as the "Dragonetti Act." To succeed in a statutory cause of action for wrongful use of civil proceedings, a plaintiff must allege and prove the following five elements: (1) the defendant has procured, initiated or continued the civil proceedings against him; (2) the proceedings were terminated in his favor; (3) the defendant did not have probable cause for his action; (4) the primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based; and (5) the plaintiff has suffered damages as set forth in [42 Pa. C.S. § 8353].[4] 42 Pa. C.S. § 8354.

"A person has probable cause to institute suit if he or she 'reasonably believes in the existence of the facts upon which the claim is based' and either:

> (1) Reasonably believes that under those facts the claim may be valid under the existing or developing law;
>
> (2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge [or] information; or

---

[4] A Dragonetti Act plaintiff may recover expenses, including any reasonable attorney fees, that he has reasonably incurred in defending himself in the proceedings, any specific pecuniary loss that has resulted from the proceedings, any emotional distress that has been caused by the proceedings, and punitive damages according to law in appropriate cases. 42 Pa. C.S. § 8353.

   (3)  Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

Bannar v. Miller, 701 A.2d 242, 248 (Pa. Super. Ct. 1997) (citing 42 Pa. C.S. § 8352). Cases interpreting this statute hold that probable cause is a matter of law for the court "under an admitted or clearly established set of facts." Wallach v. Stradley, Ronon, Stevens and Young, No. 3776, 1996 WL 942117, at *4 (Pa. Com. Pl. Apr. 29, 1996) (citing Gentzler v. Atlee, 660 A.2d 1378, 1382 (1995), appeal denied, 670 A.2d 142 (1995) (quoting Dietrich Indus. Inc. v. Abrams, 455 A.2d 119 1982)). The absence of probable cause for a particular claim is not sufficient to warrant recovery. Bobrick Corp. v. Santana Prods., Inc., 698 F. Supp. 2d 479, 492 (M.D. Pa. 2010), aff'd 422 Fed. Appx. 84 (3d Cir. 2011) (slip opinion). Rather, the plaintiff must show an absence of probable cause for the entire action. Id.

  However, even if a plaintiff can show that the defendant lacked probable cause, the defendant is not liable unless the plaintiff can demonstrate that the underlying action was filed for an improper purpose. Broadwater v. Sentner, 725 A.2d 779, 784 (Pa. Super. Ct. 1999). Where the underlying action was filed or maintained without justification, an improper purpose may be inferred. See Id. Although such an inference is permissible, it is not required. Buchleitner v. Perer, 794 A.2d 366, 377 (Pa. Super. Ct. 2002). The plaintiff, of course, bears the burden of showing that the "primary purpose for which the proceedings were brought was not that of securing . . . adjudication of the claim on which the proceedings were based." Bobrick Corp., 698 F. Supp. 2d at 491 (quoting 42 Pa. C.S. § 8354(4)). It is thus evident that "a party seeking redress under Dragonetti bears a heavy burden." Id. (citing U.S. Express Lines, Ltd. v.

8

Higgins, 281 F.3d 383, 394 (3d Cir. 2002)).

"The court decides the existence of probable cause . . . or improper purpose as a matter of law when the facts are not in dispute." Id. (citing Schmidt v. Currie, 217 Fed. Appx. 153, 155 (3d Cir. 2007)).  Moreover, the questions of probable cause and improper purpose may be determined on a motion to dismiss. Id. at 491-92 (citing U.S. Express Lines, 281 F.3d at 395-96).

### III.   DISCUSSION

#### A.   State Court's Denial of Plaintiff's Summary Judgment Motion Does Not Conclusively Indicate Probable Cause

The Defendants argue that we may infer that the Defendants had probable cause to initiate the state court action because the state court denied Plaintiff's motion for summary judgment and permitted a trial on the merits.  Plaintiff argues that the state court's denial of his pre-trial motion in the underlying action does not necessarily establish that the Defendants had probable cause for litigating that action.  In support of this argument, Plaintiff cites to Ludmer v. Nernberg, 640 A.2d 939 (1994) and Palumbo v. Connors, No. 95-5526, 1996 WL 243649 (E.D. Pa. May 9, 1996).

In Ludmer v. Nernberg, the underlying action involved a suit brought by a plaintiff's attorney against a defendant doctor who served as an expert witness for the plaintiff in a prior personal injury case. 640 A.2d at 941.  The attorney claimed that the doctor did not properly cooperate with him in the preparation of the personal injury action and that he interfered with the relationship between himself and his client. Id.  As a result of the doctor's alleged acts, the attorney alleged that he was forced to settle the personal injury suit for less money. Id.

9

Following the completion of discovery, the doctor filed a motion for summary judgment, which was granted in his favor. Id.

Following the grant of summary judgment, the doctor filed suit against the attorney for wrongful use of civil proceedings. Id. The jury returned a verdict for the doctor and awarded him $75,000 in damages. Id. The doctor appealed the verdict, arguing, *inter alia*, that in the underlying case, the dismissal of the doctor's demurrer to the complaint and the grant of a motion to permit the taking of depositions were conclusive evidence that the attorney had probable cause in the underlying case. Id. at 944. In support of his argument, the attorney cited the Restatement (Second) of Torts § 675, Comment *b*, which states, in relevant part:

> b. *Effect of termination in favor of the person against whom the proceedings were brought*. As in the case of the initiation of criminal proceedings, a decision by a competent tribunal in favor of the person initiating civil proceedings is conclusive evidence of probable cause. This is true although it is reversed on appeal and finally terminated in favor of the person against whom the proceedings were brought. Likewise, a termination of civil proceedings by a competent tribunal adverse to the person initiating them is not evidence that they were brought without probable cause.

Restatement (Second) of Torts § 675, cmt. b. The appellate court found that the word "decision" contained in the above section of the Restatement referred to "the termination of proceedings and not to decisions on procedural matters prior to the termination of the case." 640 A.2d at 944. Thus, the appellate court held that the court's denial of the attorney's pre-trial motions did not conclusively establish probable cause. Id.

Palumbo followed Ludmer's holding and similarly declined to find that a trial court's denial of pre-trial motions are conclusive evidence that a plaintiff in an underlying action had

probable cause. In that case, the underlying action was essentially a breach of contract action, with additional claims of fraud, rescission, an accounting, and punitive damages. 1996 WL 243649, at *1. Following a bench trial in the state trial court, the judge entered verdicts in favor of the plaintiff on the breach of contract count and in favor of the defendant on all remaining counts. Id. Subsequently, the defendant filed suit against the plaintiff and its attorney for wrongful use of civil proceedings. Id. at *2. The plaintiff's attorney attempted to defend against the claim by arguing that the denial of the defendant's motion for compulsory non-suit and a directed verdict at the close of trial, along with his decision on the merits, conclusively established that he had probable cause to initiate and pursue the suit. Id. at *5. The district court disagreed with the plaintiff's attorney and expressly followed the Pennsylvania Superior Court's decision in Ludmer. We will do the same and we will, therefore, deny the Defendants' motion to dismiss on the ground that the state court's denial of Plaintiff's summary judgment motion preclusively establishes probable cause.[5]

**B.    Statute of Limitations**

"Whether a complaint is timely filed within the limitations period is a matter of law for the court to determine." Goleman v. York Intern. Corp., No. 11-1328, 2011 WL 3330423, at *4 (E.D. Pa. Aug. 3, 2011) (citing Sevast v. Kakouras, 915 A.2d 1147, 1153 (Pa. 2007)). In Pennsylvania, "the statute of limitations [for a claim of unjust enrichment] begins to run as soon as the right to institute and maintain the suit arises." Martin v. Ford Motor Co., 765 F. Supp. 2d

---

[5] There is support for the proposition that a denial of dispositive motions is preclusive evidence of probable cause if the denial is premised upon conflicts of material fact. See Meiksin v. Howard Hanna Co., Inc., 590 A.2d 1303, 1307 (Pa. Super. Ct. 1991). Because we do not know the court's reasons for denying summary judgment on the statute of limitations issue, we will follow Palumbo and Ludmer.

673, 686 (E.D. Pa. 2011) (citing Sevast, 915 A.2d at 1153).  The Third Circuit has held that the cause of action accrues when "'the first significant event necessary to make the claim 'suable' occurs." Id. (quoting Lake v. Arnold, 232 F. 3d 360, 366 (3d Cir. 2000)).

Here, the Defendants argue that Plaintiff's Complaint should be dismissed because they had probable cause to believe that the statute of limitations for unjust enrichment and conversion began to run in 2005, when Du Pont demanded payment.  Plaintiff counters that the statute of limitations for both claims began to run in 1986 as a matter of law, when Du Pont consigned and delivered items to him.  Plaintiff further argues that the case law relied on by the Defendants is inapposite.  We note that Plaintiff does not address whether the Defendants had probable cause to procure, institute, or continue proceedings against him notwithstanding a potential statute of limitations defense.  Apparently, Plaintiff believes that the state court's favorable determination of the statute of limitations issue is prima facie evidence of their lack of probable cause to support the merits of their claims.  In litigating the merits of the statute of limitations defense, the parties have ignored what we view to be a threshold issue.  That issue is whether the probable cause element in a Dragonetti Act claim encompasses the statute of limitations.  In other words, to successfully defend against a Dragonetti Act suit, must the Dragonetti defendant prove that he had probable cause to believe that the action was filed within the statute of limitations?  For the following reasons, we find that the answer is in the affirmative.

In Bobrick Corp. v. Santana Products, Inc., 698 F. Supp. 2d 479 (M.D. Pa. 2010), aff'd 422 Fed. Appx. 84 (3d Cir. Apr. 6, 2011) (slip opinion), the court discussed the Dragonetti Act's probable cause requirement.  In Bobrick, the plaintiff in the underlying case asserted a claim under the Lanham Act, which the defendant asserted was barred by the doctrine of laches.

Santana Prods., Inc. v. Bobrick Washroom Equipment, Inc., 249 F. Supp. 2d 463, 497 (M.D. Pa. 2003), aff'd in part, vacated in part, remanded by 401 F.3d 123 (3d Cir. 2005).  The district court determined that the plaintiff was entitled to prevail on the laches issue because it had failed to prove that the defendant suffered material prejudice as a result of the delay in bringing suit.  Id. at 501.  On appeal, the Third Circuit reversed and held that the plaintiff's Lanham Act claim was barred by the doctrine of laches.  401 F.3d at 138.  Thereafter, the defendant brought a Dragonetti action against the plaintiff claiming that it lacked probable cause for the Lanham Act claim because the Third Circuit ultimately found that it was barred by the doctrine of laches.  698 F. Supp. 2d at 494-95.  The district court rejected the defendant's position and held that its decision in favor of the former plaintiff on the laches issue "foreclosed a finding that probable cause to pursue the Lanham Act claim was lacking."  Id. at 495.

We acknowledge that, in this case, Plaintiff asserts that the expiration of the statute of limitations indicates the Defendants' lack of probable cause while the plaintiff in Bobrick asserted the doctrine of laches as evidence of lack of probable cause.  We, however, find the distinction to be of small import.  Statutes of limitations and the equitable doctrine of laches are designed to effectuate similar purposes.  Statutes of limitations "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise."  United States v. Kubrick, 444 U.S. 111, 117 (1979) (internal citations omitted).  They represent a "pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."  Id.  The

doctrine of laches is essentially the equitable counterpart to the statute of limitations and can be asserted prior to the expiration of the statute of limitations or after its expiration. 249 F. Supp. 2d at 500 (citation omitted). A defendant asserting laches as a bar to suit must prove: (1) inexcusable delay in bringing suit; and (2) prejudice to the defendant as a result of the delay. 401 F.3d at 135 (citing Univ. of Pittsburgh v. Champion Prods., Inc., 686 F.2d 1040, 1044 (3d Cir. 1982)). Thus, statutes of limitations and the doctrine of laches share common purposes of preventing the litigation of stale claims and protecting a defendant from prejudice. We are, thus, of the opinion that the absence of presence of probable cause may be inferred from the timeliness of the filing of the action.

      Here, Plaintiff's only theory of liability is that the Defendants lacked probable cause because the state court determined that the statute of limitations had expired well before 2007. The Defendants claim that they had probable cause based on the case law, the lack of a written agreement between Plaintiff and Du Pont, Plaintiff's inability to produce sufficient records or receipts of payment, and Plaintiff's conflicting versions of what transpired between himself and Du Pont. Though not binding on this court, it is useful to note that the state court itself was conflicted over when the statute of limitations began to run and deferred issuing an opinion on the matter until after it had heard the case on the merits. Even then, the state court's discussion fails to pinpoint when the statute began to run. Thus, the dispute over when the statute of limitations began to run was, at best, uncertain. "A reasonable belief in the *possibility* that the claim may be held valid, is sufficient to give probable cause for the initiation of civil proceedings." Restatement (Second) of Torts, § 674, comment e (emphasis added). As explicated in Comment f to the § 675of the Restatement (Second) of Torts:

14

> If the legal validity of a claim is uncertain, the person who initiates the civil proceeding may believe that his claim is meritorious, but he can have no more than an opinion that the chances are good that the court might decide to uphold it. ***The question is not whether he is correct in believing that the court would sustain the claim, but whether his opinion that there was a sound chance that the claim might be sustained was a reasonable one***. To hold that the person initiating civil proceedings is liable unless the claim proves to be valid, would throw an undesirable burden on those who by advancing claims not heretofore recognized nevertheless aid in making the law consistent with changing conditions and changing opinions. There are many instances in which a line of authority has been modified or rejected. To subject those who challenge such authority to liability for wrongful use of civil proceedings might prove a deterrent to the overturning of archaic decisions.

Id. at comment f (emphasis added). Furthermore, if there is a substantial ground for difference of opinion, such may indicate the presence of probable cause. 698 F. Supp. 2d at 496. "A substantial ground for difference of opinion exists when there is a genuine doubt or conflicting precedent as to the correct legal standard." Id. (citation omitted). For the following reasons, we find that there was a substantial ground for difference of opinion regarding when the statute of limitations began to run. We will begin our evaluation with the Defendants' conversion claim.

Conversion is the deprivation of another's right of property in, or use of possession of, a chattel, without the owner's consent and without lawful justification. Shonberger v. Oswell, 530 A.2d 112, 114 (Pa. Super. Ct. 1987) (citing Stevenson v. Economy Bank of Ambridge, 197 A.2d 721, 726 (Pa. 1964)). Conversion can result only from an action intended to affect chattel. Id. (citation omitted). Money can be the subject of conversion but before money can be converted, it must belong to the plaintiff. Montgomery v. Federal Ins. Co., 836 F. Supp. 292, 300 (E.D. Pa. 1993) (citing Lee Tire and Rubber Co. v. Bonholzer, 81 Pa. D & C 218, 221 (1951)). Specific

15

intent is not required, however, but rather an intent to exercise dominion or control over the goods which is in fact inconsistent with the plaintiff's rights establishes the tort. Id. (citing Pearl Assurance Co. v. Nat'l Ins. Agency, 30 A.2d 333, 337 (Pa. Super. Ct. 1943)). In Pennsylvania, the statute of limitations for the tort of conversion is two years. 42 Pa. C.S. § 5524(3).

The Defendants argue that they had probable cause to believe that their conversion claim was instituted within the statute of limitations because the period of limitations did not begin to run until 2005, when the parties allegedly terminated their business relationship. Assuming that the statute did not begin to run until 2005, the claim would have been filed within the two-year statute of limitations. Plaintiff, on the other hand, argues that the statute of limitations for a claim of conversion begins to run "upon the taking of the property," which, in this case, occurred in 1986. We note that, following this logic, the Defendants' conversion claim was clearly out-of-time as the Du Pont parties instituted suit in 2007.

We find that the Defendants' opinion that there was a sound chance that their conversion claim might be sustained in state court was a reasonable one. First, it is not settled law that the statute of limitation begins to run "upon the taking of property" or, in this case, upon the taking of the consigned goods, in the context of consignment agreements as Plaintiff suggests. In fact, our research has found no case law directly addressing when the statute of limitations begins to run for a claim of conversion premised upon an oral consignment agreement. This alone is sufficient to demonstrate a "genuine doubt" as to the correct legal standard. Bobrick, 698 F. Supp. 2d at 496. Furthermore, the tort of conversion requires an intent to exercise dominion or control over the goods which is in fact *inconsistent with the plaintiff's rights*. Montgomery, 836 F. Supp. at 300 (citing Pearl Assurance Co., 30 A.2d at 337). Plaintiff does not allege that his

16

dominion or control over the consigned goods in 1986 was inconsistent with Du Pont's rights in the property.  By all accounts, it was mutually agreed that Plaintiff's control over the goods was entirely consistent with Du Pont's wishes when Plaintiff originally received them.  It was only after Plaintiff received the goods that his control over them became inconsistent with Du Pont's rights in them.  The precise point in time when Plaintiff's possession of the goods or money received from selling the goods became inconsistent with Du Pont's rights was a factual issue.  The Du Pont parties could reasonably have believed that Plaintiff's dominion or control over the property did not become inconsistent with Du Pont's until he demanded payment and or return of the goods and was refused.  That event occurred in 2005.  Thus, we find that the Defendants had probable cause to believe their conversion claim might be upheld as filed within the statute of limitations.  Because we have determined that probable cause existed for one of the claims in the underlying suit, we need not address the Defendants' unjust enrichment claim.  See Bobrick, 698 F. Supp. 2d at 492.

    C.    **Improper Purpose**

Plaintiff's Dragonetti Act claim also fails for the additional reason that he has failed to sufficiently allege an improper purpose.  As mentioned above, a court may but need not infer an improper purpose from a lack of probable cause.  Buchleitner, 794 A.2d at 377.  We decline to infer an improper purpose from a lack of probable cause.  In Plaintiff's Complaint, he alleges that the Defendants brought suit against him "for the improper purpose of bullying him into paying money to the [Defendants]."  (Compl. ¶ 34.)  The Defendants argue that Plaintiff cannot show that they acted with an improper motive by direct evidence.  Plaintiff responds that we should infer an improper purpose because the Defendants knew or should have known that the statute of

limitations was well expired.  We find that the Defendants' argument is better suited for a motion for summary judgment as it pertains to Plaintiff's proofs and not his allegations contained in the Complaint.  However, our concern is the sufficiency of the Complaint and we will limit our examination accordingly.

To survive a motion to dismiss, Plaintiff's Complaint must allege "'facts suggestive of [the proscribed] conduct.'" <u>Phillips</u>, 515 F.3d at 233 (alteration in original) (quoting <u>Twombly</u>, 550 U.S. at 563 n.8).  Furthermore, Plaintiff's grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. 544, 555 (2007).  Plaintiff's sole allegation relating to an improper purpose is that the Defendants initiated suit "for the improper purpose of bullying him into paying money to the [Defendants]."  (Compl. ¶ 34.)  Aside from this conclusory allegation, Plaintiff has not alleged any facts to support a finding of improper purpose on the part of the Defendants.  Thus, we will dismiss Plaintiff's Complaint.

An appropriate Order follows.