IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| W. GRAHAM ARADER, : | |
| : | |
| Plaintiff, : | CIVIL ACTION |
| : | |
| v. : | |
| : | No. 11-3626 |
| VALENTIN I. DIMITROV, in his capacity : | |
| as Personal Representative of the : | |
| Estate of John E. Du Pont, Deceased et al., : | |
| : | |
| Defendants. : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                         **FEBRUARY 3, 2012**

Presently before the Court is Plaintiff, W. Graham Arader's ("Plaintiff") Motion for Reconsideration of our decision to dismiss his Complaint. Plaintiff has also filed a "Motion Under Fed. R. Civ. P. 59(e) and Fed. R. Civ. P. 15(a) to File [an] Amended Complaint."[1] For the following reasons, Plaintiff's Motions will be denied.[2]

**I.   FACTS**[3]

Plaintiff owns an art gallery in New York and sells rare books, photographic plates, and

---

[1] This Motion is listed on the docket as a "Motion to Alter Judgment." (Doc. No. 16). However, Plaintiff refers to it as a Motion to Amend the Complaint in the body of his brief. We will, therefore, refer to this Motion as a Motion to Amend the Complaint in this Memorandum Opinion.

[2] Defendants are Valentin I. Dimitrov, as Personal Representative of the Estate of John E. Du Pont, Deceased ("Dimitrov"), Taras M. Wochok, as co-trustee of the John E. Du Pont Deed of Trust ("Wochok"), and Diane Hazen Brady, individually and as co-trustee of the John E. Du Pont Deed of Trust ("Brady") (collectively, "Defendants").

[3] For the sake of clarity, we restate the facts from our Memorandum granting the Defendants' Motion to Dismiss. See Arader v. Dimitrov, et. al, No. 11-3626, 2011 WL 4807924, at *1 (E.D. Pa. Oct. 7, 2011).

like items and materials on a consignment basis.  (Compl. ¶ 4.)  John E. Du Pont[4] ("Du Pont") was a billionaire and a member of the prominent Du Pont family.  (Id. ¶ 6.)  Defendant, Dimitrov, is the personal representative of Du Pont's Estate, which was probated on January 18, 2011, in the Delaware County Register of Wills.  (Id. ¶ 7.)  Defendants Wochok and Brady are co-trustees of Du Pont's Deed of Trust, dated April 6, 1984, as amended ("Trust") with a business address in Paoli, Pennsylvania.  (Id. ¶ 8.)  Du Pont was also a co-trustee until his death.  (Id. ¶ 9.)  In 1996, Du Pont shot and killed Olympic gold medal wrestler Dave Schultz on his 800 acre estate in Delaware County, Pennsylvania.  (Id.)  In 1997, Du Pont was convicted of third degree murder and sentenced to 13-40 years in prison.  (Id.)  Du Pont died while incarcerated on December 9, 2010.  (Id.)[5]

Plaintiff alleges that, in the 1980's, he and Du Pont had a business relationship whereby Du Pont consigned rare books, watercolors, and plates to Plaintiff for sale at his art gallery.  (Id. ¶ 10.)  Plaintiff further alleges that the business relationship between Du Pont and himself ended in the late 1980's.  According to Plaintiff, in 2005, nine years after Du Pont was incarcerated and fifteen years after Plaintiff and Du Pont terminated their business relationship, Du Pont and Wochok contacted Plaintiff and demanded payment for the value of certain consigned goods.  (Id. ¶ 13.)  Plaintiff informed Du Pont and Wochok that he had either returned the consigned goods to Du Pont or had paid Du Pont for such goods prior to Du Pont's imprisonment in 1996.  (Id. ¶ 14.)  Plaintiff's position is that Du Pont and the Defendants demanded payment knowing

---

[4]It is noted that Plaintiff refers to the spelling of "Du Pont" as "duPont."  Other filings spell the name as "Du Pont."  We will spell the name as it is in the caption of this action - "Du Pont."

[5] Du Pont's estate was probated on January 18, 2011, in the Delaware County Register of Wills. Dimitrov is the personal representative of the estate. (Compl. ¶ 7.)

that their demand was grossly untimely.  (Id. ¶ 15.)

      **A.**      **The State Court Action**

On September 4, 2007, three individuals filed a two-count complaint against Plaintiff in Delaware County (the "Delaware County Action"): (1) Du Pont, both in his individual capacity and in his capacity as co-trustee of the Trust; (2) Wochok, in his capacity as co-trustee of the Trust; and (3) Brady in her capacity as co-trustee of the Trust (collectively, "Du Pont parties"). (Id. ¶ 18.)  The Du Pont parties claimed that Plaintiff committed the tort of conversion and that he was unjustly enriched by failing to pay Du Pont for the goods.  (Id. ¶¶ 20-21.)  Plaintiff alleges that these actions have statutes of limitations of two and four years, respectively.  (Id.)

Plaintiff alleges that, despite the fact that the statute of limitations for both counts had well expired, he was forced to defend the Delaware County Action throughout all phases of the litigation.  (Id. ¶ 23.)  On August 28, 2008, Plaintiff filed a motion for summary judgment on the grounds that the Du Pont parties' claims were barred by the statute of limitations.  (Defs.'s Mot. Summ. J., Ex. A at 2.)  On October 24, 2008, the Honorable George A. Pagano denied the motion without opinion.  On July 23, 2010, after a bench trial, before the Honorable James. F. Proud, the court entered a verdict in favor of Plaintiff on the merits of the claims and on the statute of limitations issue.  (Id., Ex. D at 1-2.)  The Du Pont parties then appealed to the Pennsylvania Superior Court without first filing post-trial motions, resulting in the trial court quashing the appeal on September 28, 2010.  (Compl. ¶ 25.)  The trial court granted the Du Pont parties leave to file untimely post-trial motions, including a motion for reconsideration on the statute of limitations issue, but then denied them.  (Id. ¶ 26; Defs.' Mot. Summ. J., Ex. E at 2.)

3

The Du Pont parties then appealed the court's denial of their motion for reconsideration on the statute of limitations issue. (Defs.' Mot. Summ. J., Ex. E at 2-3.) On January 28, 2011, the court issued an opinion holding that both counts in the Complaint were time-barred because the last contact between the parties was found to have been in 1986. (Id.) Accordingly, the court opined that the Du Pont parties were required to bring their claim for conversion by 1988 and their claim for unjust enrichment by 1990. (Id. at 3.) On March 18, 2011, the Du Pont parties voluntarily discontinued their Superior Court appeal. (Compl. ¶ 29.) Plaintiff alleges, here, that, between 2007 and 2011, he was forced to expend $46,221.67 in fees and costs to defend the action brought against him in Delaware County. (Id. ¶ 38.)

### B. The Federal Court Action

On June 3, 2011, Plaintiff filed the subject Complaint comprised of a single count for wrongful use of civil proceedings.[6] Therein, Plaintiff alleged that the Defendants wrongfully

---

[6] The Pennsylvania legislature codified the common law action for wrongful use of civil proceedings at 42 Pa. C.S. § 8351(a). The statute provides, in relevant part:

> (a) Elements of action.–A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings [if]:
>
> (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
>
> (2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa. C.S. § 8351. The statute is also referred to as the "Dragonetti Act." To succeed in a statutory

4

instituted civil proceedings against him in the Delaware County Court of Common Pleas knowing that the statute of limitations had expired.  On August 5, 2011, the Defendants filed a Motion to Dismiss arguing that Plaintiff had failed to state a claim as a matter of law because there were genuine factual and legal questions relating to when the business relationship between Du Pont and Arader terminated.  The Defendants argued that Plaintiff's claim failed as a matter of law because he could not prove that the primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of the parties or adjudication of the claim on which the proceedings were based.  (Defs.' Mot. to Dismiss Br. at 6.)

      On the other hand, Plaintiff argued that his business relationship with Du Pont terminated in the 1980's and that the law is clear that the statute of limitations for conversion and unjust enrichment began to run at the time Plaintiff received the goods in 1986.  Moreover, Plaintiff argued that improper purpose may be inferred from a lack of "probable cause."  Finally, Plaintiff argued that the state court's denial of his summary judgment motion is not conclusive evidence that the suit was supported by probable cause.

      In our prior Memorandum Opinion, we rejected Defendants' argument that the state

---

cause of action for wrongful use of civil proceedings, a plaintiff must allege and prove the following five elements: (1) the defendant has procured, initiated or continued the civil proceedings against him; (2) the proceedings were terminated in his favor; (3) the defendant did not have probable cause for his action; (4) the primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based; and (5) the plaintiff has suffered damages as set forth in [42 Pa. C.S. § 8353].  42 Pa. C.S. § 8354.

court's denial of Arader's summary judgment motion in that court preclusively established that they had probable cause to bring their conversion action. Arader, 2011 WL 4807924, at *9-11. However, in granting the Defendants' Motion to Dismiss, we determined that, under 42 Pa. C.S. § 8354, the Defendants had "probable cause" to believe that their conversion claim in the state court might be upheld as having been filed within the statute of limitations. Id. at 14-17. In addition, we found that Plaintiff's Dragonetti Act claim also failed because he failed to sufficiently allege an improper purpose. Id. at 17-18.

Thereafter, Plaintiff filed the present Motion for Reconsideration. Plaintiff argues that we erred in two ways. First, Plaintiff asserts that Pennsylvania's "gist of the action" doctrine barred the Defendants from bringing an action for conversion against him in state court. See Werwinski v. Ford Motor Co., 286 F.3d 661, 681 (3d Cir. 2002) (applying Pennsylvania law) (gist of the action doctrine bars plaintiffs from bringing tort claims that merely replicates claim for breach of an underlying contract). Plaintiff asserts that the Defendants contended in state court that Du Pont had an oral consignment agreement, i.e., a contract, with him, but that the "gist of the action" doctrine prohibits parties from relabeling an action for breach of contract as a tort claim for conversion. (Pl.'s Mot. Recons. at 5-6.) Plaintiff asserts further that this doctrine had been in effect long before the Defendants' action against him so that the Defendants' claim of conversion against him was frivolous *ab initio*. (Id.)

Second, Plaintiff argues that "even if a conversion action was permissible under the gist of the action doctrine, the allegations in the complaint, accepted as true, defeat the Court's contention that the Du Pont parties reasonably believed that the statute of limitations began to run in 2005." (Id. at 6.) In addition, Plaintiff asserts that "construed in the light most favorable

6

to the plaintiff, the complaint demonstrates that the lawsuit was for an improper purpose." (Id. at 7.)

Plaintiff then filed the instant Motion to Amend the Complaint on November 4, 2011. Plaintiff asserts that "multiple Third Circuit decisions require district courts to notify the plaintiff prior to dismissing an original complaint that he has the opportunity to amend his complaint, whether or not he himself requests leave to amend." See, e.g., Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008). Plaintiff asserts that we did not provide such notice or afford him the opportunity to amend before entering our dismissal order, and for this reason alone, we should grant Plaintiff leave to file the amended Complaint that he has attached to this Motion. (Pl.'s Mot. to Amend at 1.) Plaintiff further argues that even if Phillips does not apply, the Court must review this timely Rule 59(e) motion to amend under the liberal standards of Federal Rule of Civil Procedure 15(a). (Id. at 2.) Plaintiff asserts that this Motion proposes an alternative solution, assuming arguendo that the original Complaint does not state a cause of action, and such amended Complaint does state a valid cause of action against Defendants for wrongful use of civil proceedings.[7] (Id.)

## II.   STANDARDS OF REVIEW

### A.   Motion for Reconsideration

"The United States Court of Appeals for the Third Circuit has held that the purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Cohen v. Austin, 869 F. Supp. 320, 321 (E.D. Pa. 1994). Accordingly, a

---

[7] Plaintiff filed an Amended Motion to Amend Complaint on November 8, 2011. Defendants filed responses to all of Plaintiff's motions and Plaintiff filed a Reply on December 20, 2011.

district court will grant a party's motion for reconsideration in any of three situations: (1) the availability of new evidence not previously available; (2) an intervening change in controlling law; or (3) the need to correct a clear error of law or to prevent manifest injustice. Id. Federal courts have a strong interest in the finality of judgments; as such, motions for reconsideration should be granted sparingly. Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995). Dissatisfaction with the Court's ruling is not a proper basis for reconsideration. Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).

      B.      Motion to Amend the Complaint

The decision whether to grant or deny a motion to amend rests in the sound discretion of the trial court. Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983). Federal Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." F.R.C.P. 15(a)(2). The Third Circuit has identified "undue delay, bad faith, dilatory motive, prejudice, and futility" as factors justifying a court's decision to deny a party leave to amend. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). The Third Circuit has also held that "prejudice to the nonmoving party is the touchstone for denial of an amendment." Cornell & Co. v. Occupational Safety & Health Rev. Comm'n, 573 F.2d 820, 823 (3d Cir. 1978). "A party is unduly prejudiced if an amendment would cause surprise, result in additional discovery, or add cost in preparation to defend against new facts or theories." Amquip Corp. v. Admiral Ins. Co., 231 F.R.D. 197, 199 (E.D. Pa. 2005). Thus, while Rule 15(a)(2) contemplates a liberal standard for the amendment of pleadings, a court is justified in denying a motion to amend where these equitable factors weigh against allowing the amendment. Forman v. Davis, 371 U.S. 178, 182

8

(1962).

## III. DISCUSSION

Plaintiff seeks to amend his Complaint arguing that the Amended Complaint establishes that Plaintiff has a valid action against Defendants for five reasons: (1) the statute of limitations began to run in the late 1980's when plaintiff's business relationship with Du Pont ended, because at that juncture, Arader no longer had any right to retain any consigned goods or money from sales of consigned goods;" (2) a letter dated August 14, 1986, from Plaintiff to Du Pont provides an alternative reason why the statute of limitations began to run in the 1980's; (3) Du Pont admitted in his deposition that he demanded payment from Arader in the 1980's, thereby starting the statute of limitations to run at that time; (4) the "gist of the action doctrine;" and (5) Defendants had no evidence to support their claims that Plaintiff failed to pay him for consigned goods or failed to return any consigned goods. (Id. at 5-6.)  We will discuss each claim in turn, but will first address Plaintiff's contention that he was not given the opportunity to amend before we granted the Defendants' Motion to Dismiss.

### 1. Opportunity to Amend the Complaint

Plaintiff contends that under the decision by the United States Court of Appeals for the Third Circuit in Phillips, 515 F.3d at 236, we erred in not informing him that we believed the original Complaint was deficient, and did not afford him the opportunity to amend his Complaint. (Pl.'s Am. Mot. to Am. Compl. at 8-9.)  In Phillips, a Section 1983 case, the court announced that "[i]f a complaint is vulnerable to 12(b)(6), a district court must permit a curative amendment, unless an amendment would be inequitable or futile." 515 F.3d at 236.

Here, although we were of the opinion that it would have been futile for Plaintiff to

9

amend his Complaint, we did not specifically state so in our decision granting Defendants' Motion to Dismiss. Additionally, we did not give Plaintiff the opportunity to amend before granting the Motion. In reference to the Phillips' holding, the Third Circuit stated in Snyder v. Baxter Healthcare, Inc., that "[T]he reach of this rule outside of the Section 1983 context, and extent to which a district court must *sua sponte* offer leave to amend, remains unresolved." 393 Fed. Appx. 905, 910 (3d Cir. 2010); See also Fletcher-Harlee Corp., v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007). Thus, as of the date of our prior decision, the Third Circuit had not mandated that we were to afford Plaintiff the opportunity to amend before we granted the Motion to Dismiss. However, because, as the court stated in Snyder, that the reach of the Phillips' holding outside of the Section 1983 context remains unresolved, we will consider Plaintiff's proposed amendments to his Complaint under the liberal standard of Fed. R. Civ. P. 15(a)(2) in determining whether to grant his Motion to Amend.

**2.   Proposed Amendments**

We first reiterate from our prior Memorandum Opinion that "[t]he court decides the existence of probable cause . . . or improper purpose as a matter of law when the facts are not in dispute." Bobrick Corp. v. Santana Products, Inc., 698 F. Supp. 2d 479, 491 (M.D. Pa. 2010), aff'd, 422 Fed. Appx. 84 (3d Cir. Apr. 6, 2011) (slip opinion) (citing Schmidt v. Currie, 217 Fed. Appx. 153, 155 (3d Cir. 2007)). Moreover, the questions of probable cause and improper purpose may be determined on a motion to dismiss. Id. at 491-92 (citing U.S. Express Lines, 281 F.3d 383, 395-96 (3d Cir. 2002).

As noted above, the Third Circuit has identified "undue delay, bad faith, dilatory motive,

prejudice, and futility" as factors justifying a court's decision to deny a party leave to amend. Shane, 213 F.3d at 115. We will address the issue of whether Plaintiff's proposed amendments are futile. "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "In determining whether a claim would be futile, the district court applies the same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6)." Id.; see also Travelers Indem. Co. v. Dammann & Co., Inc., 594 F.3d 238, 243 (3d Cir. 2010).

### A. Reasons Asserted in the Original Complaint

Plaintiff first asserts that we should allow him to amend his Complaint for the reason "presented in the original complaint: the statute of limitations began to run in the late 1980's when plaintiff's business relationship with Du Pont ended, because at that juncture, Arader no longer had any right to retain any consigned goods or money from sales of consigned goods." (Pl.'s Mot. to Amend at 5.) However, we have already articulated our reasons for rejecting this argument in our prior decision. See Arader, 2011 WL 4807924 at *9-11. Because we do not find the need to correct a clear error of law or to prevent manifest injustice in reconsidering this argument, we will not address it again here. See Cohen, 869 F. Supp. at 321.

### B. The August 14, 1986 Letter from Plaintiff to Du Pont

Plaintiff next asserts that a letter dated August 14, 1986, from Plaintiff to Du Pont provides an alternative reason why the statute of limitations began to run by this date, at the

latest. (Pl.'s Mot. Am. Compl., Ex. A.)[8] Plaintiff states that he wrote this letter, which included an inventory of various consigned items, and indicated which items had been sold and paid for, sold with payment due, or were still in his possession for sale. Plaintiff argues that based on this letter, Du Pont knew or should have known on this date that Plaintiff's claim of payment was false, that Plaintiff was cheating him out of money and/or consigned goods, and that he had an action against him for conversion and unjust enrichment. Plaintiff further asserts that Du Pont received the letter but never read it; thus, electing to sleep on his rights instead of making a demand within a reasonable time or filing a timely action. (Id.) However, after a careful reading of this letter, we are of the opinion that it does not support Plaintiff's assertions. Consequently, adding this amendment to his Complaint would be futile.

The letter includes a list of items to which Plaintiff has made handwritten notations in the form of initials next to each item. The letter states that "Each entry is marked I.S. for presently in my stock, S.P. for sold and paid for and S.P.D. for sold and payment due." (Id. at Ex. A.) A review of the items listed in the inventory indicates that approximately one hundred twenty-eight (128) items were marked as I.S., four (4) as S.P., and five (5) as S.P.D. (Id.) In other words, the letter indicates that at that time, Plaintiff had a significant number of Du Pont's items in his possession, and that only a few were actually sold and paid for, or sold but payment was due. We agree with the Defendants that this letter and list does not establish that Du Pont knew or should have known on this date that he had an action against Plaintiff for conversion and unjust

---

[8] In his filings, Plaintiff indicates that this letter is part of Exhibit A which is attached to his Motion to Amend. However, such letter was not included in this Exhibit, but only an inventory of Du Pont's items that Plaintiff held for sale. We contacted both parties concerning this omission, and Plaintiff's counsel forwarded us a copy of this letter. We have added it to the record and will refer to it as "Exhibit A."

enrichment. Rather, we are of the opinion that this letter can be interpreted in a number of ways. One interpretation is certainly that the business relationship between Plaintiff and Du Pont had not ended at this time, but rather, was a continuous one because almost all of the items listed remained in Plaintiff's possession for future sale while only a few had been sold, and a few others had been sold, but no payment had been received. Notably, the letter does not indicate that Du Pont had actually been paid the money for the items that had been sold and paid for. Moreover, the letter does not address the relationship between Plaintiff and Du Pont and does not indicate in any way that whatever business relationship they had ended with this letter. In fact, this letter reinforces our opinion that probable cause existed for the Defendants to bring the state action. We, thus, find this proposed amendment to the Complaint to be "futile" in that the complaint, as amended, would still fail to state a claim upon which relief could be granted. In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1434.

### C. Claim that the Statue Began Running When Du Pont Demanded Payment

Plaintiff next asserts a third theory for when the statue of limitations began running. He argues that the statute began running when Du Pont demanded payment from him "prior to the end of their business relationship at the end of the 1980's." (Pl.'s Am. Mot. Am. Compl. at 12.) Plaintiff states that "[i]t is clear that duPont made these demands before the end of the parties' business relationship at the end of the 1980's, because duPont *never* spoke to Arader after the end of their relationship and *never* spoke to Arader after going to jail for murder in 1996." (Id.) In support of this assertion, Plaintiff refers to page 19 and pages 26-27 from Du Pont's deposition taken for the state court matter on July 16, 2008. (Id., Ex. B at 19, Ex. C at 26-27.) However, we find nothing in the reading of these pages of Du Pont's deposition which indicates that he

"demanded" payment from Arader in the 1980's.  In fact, Du Pont's deposition testimony indicates that he was not making a demand for payment, but was inquiring about the progress of the sale of the consigned books.  Du Pont testified at his deposition:

> Q.  Actually, for the record, this is a document that I got from counsel.  Okay.  Did you give those items to Mr. Arader for sale?
>
> A.  Yes.
>
> Q.  Okay.  And do you know whether or not he sold them?
>
> A.  I don't know.
>
> Q.  Do you remember getting any money from Mr. Arader?
>
> A.  No.  He never gave me any money at all.
>
> * * * *
>
> Q.  Did you have any dialogue with him after giving him these items to sell?
>
> A.  On several occasions I called him and asked him what had happened to the books and he told me nothing so far.

(Defs.' Resp. Am. Mot. to Am., Ex. A at 16-17).  We, thus, find that there is nothing in Du Pont's deposition testimony that indicates that he demanded payment from Plaintiff in the 1980's and/or ended their business relationship at that time.  Accordingly, we find that this amendment to the Complaint would also be "futile" as it would still fail to state a claim upon which relief could be granted.  In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1434.

### D.  Gist of the Action Doctrine

Next, Plaintiff contends that the Defendants' "clearcut violation of the 'gist of the action' doctrine again demonstrates that duPont filed and prosecuted the Delaware County lawsuit without probable cause." (Pl.'s Am. Mot. to Am. Compl. at 13.)  Plaintiff argues that this

doctrine "prohibits parties from relabeling a breach of contract action as unjust enrichment or as a tort claim for conversion. Werwinski, 286 F.3d at 681 (3d Cir. 2002) (applying Pennsylvania law) (gist of the action doctrine bars plaintiffs from bringing a tort claim that merely replicates claim for breach of an underlying contract)." (Pl.'s Am. Mot. to Am. Compl. at 13.)

In eToll, Inc. v. Elias/Savion Advert., Inc., the Pennsylvania court, applying the gist of the action doctrine, stated that a "claim should be limited to a contract claim when the 'parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.'" 811 A.2d 10, 14 (Pa. Super. Ct. 2002) (quoting Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 104 (3d Cir. 2001)). The gist of the action principle bars tort claims under the following circumstances: (1) where the claim arises solely from a contract between the parties; (2) where the duties allegedly breached were created by a contract; (3) where liability is derived from a contract; or (4) where the success of the tort claim is dependent on the terms of a contract. Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 582 (Pa. Super. Ct. 2003).

Defendants assert that the gist of the action doctrine does not bar conversion claims for alleged violations of oral consignment agreements and principally rely on Shonberger v. Oswell, 530 A.2d 112, 113 (Pa. Super. Ct. 1987). To support his argument, Plaintiff argues that "Shonberger was dead letter [law] when duPont filed his conversion claim in 2007." (Pl.'s Supp. Mem. in Support of Am. Motion to Am. Compl. at 4.) Plaintiff stated further that "[b]y this point, there were multiple gist of the action decisions flatly barring conversion claims when the facts sounded in contract. Kia v. Imaging Sciences Intern., Inc., 735 F. Supp. 2d 256 (E.D. Pa. 2010); Duane Morris, LLP v. Todi, 2002 WL 31053839 (Pa. Com. Pl. 2002). Given these many

gist of the action cases, duPont acted in bad faith by attempting to premise a conversion action on Shonberger's discredited reasoning." (Pl.'s Supp. Mem. in Support of Am. Motion to Am. Compl. at 4.)  While we agree with the Plaintiff that the gist of the action doctrine would have barred most conversion actions based on a contract in 2007 when the Defendants filed the state court action, we, however, are of the opinion that the law holding that the Defendants could not bring an action for conversion based on violations of an oral consignment agreement, was not firmly established.

In Shonberger, the plaintiff, a supplier of clothing, entered into a consignment agreement with the defendant, the terms of which were that defendant would sell plaintiff's goods through his stores, keep a percentage of the proceeds, and then remit the remainder to plaintiff.  530 A.2d at 113.  Plaintiff sued for conversion when defendant ceased making payments.  Id.  The Superior Court allowed the conversion claim to proceed.  Id.  While Plaintiff asserts that this was no longer good Pennsylvania law in 2007, he has not offered any case law supporting his position that a conversion action based on violations of an oral consignment agreement would have been barred by the gist of the action doctrine.  Also, our research has not found any support.

In fact, at least two cases in this District discussed Shonberger and acknowledged that Pennsylvania allowed conversion actions involving violations of consignment agreements and explained why alleged violations of consignment agreements between parties differ from conversion actions simply based on a contract.  In both Novacare, Inc. v. Southern Health Management Inc., No. 97-5903, 1998 WL 470142, at *3 (E.D. Pa. Aug. 11, 1998) and Peoples Mortg. Co., Inc. v. Federal Nat. Mortg. Ass'n., 856 F. Supp. 910, 929-30 (E.D. Pa. 1994), the courts determined that Shonberger was distinguishable from its instant case involving a contract

and a conversion action in that the "contract at issue in that case [Shonberger] was a consignment agreement." Id.  The decisions explained that the "nature of a consignment agreement is that title to the goods under consignment remains with the consignor, and does not pass until the time of sale, at which time title passes directly to the purchaser." Id.; See also Taylor v. Wachtler, 825 F. Supp. 95, 103 (E.D. Pa. 1993).  Both decisions concluded that the "Shonberger plaintiff had an underlying property interest in the goods under consignment, distinct from the contractual agreement.  When the defendant sold plaintiff's goods, and refused to remit the proceeds of the sales, he directly converted plaintiff's titled property interest in the goods to his own use." Id.; see also Mountbatten Surety Co., Inc. v. AFNY, Inc., No. 99-2687, 2000 WL 375259, at *6 (E.D. Pa. April 11, 2000).

Here, at the time that Defendants brought the state court action for breach of contract and conversion in 2007, it could certainly be argued that Du Pont had an underlying property interest in the items under consignment with the Plaintiff which was distinct from his oral contractual agreement.  As noted earlier, our research has not uncovered any case law which overturns the holding in Shonberger or the district court cases discussed above.  We, thus, find that the gist of the action doctrine would not have barred Defendants from bringing a conversion action against the Plaintiff in 2007, and accordingly, this doctrine is not a basis to support Plaintiff's claim that the Defendants lacked probable cause in bringing the state court action.

**E.  No Evidence to Support the Claims**

Lastly, Plaintiff argues that "duPont had absolutely no evidence to support his claims that Arader failed to pay him for consigned goods or failed to return any consigned good." (Pl.'s Supp. Mem. in Support of Am. Mot. to Am. Compl. at 13.)  Plaintiff asserts that the only

17

evidence that Plaintiff produced in the Delaware County action was the August 14, 1986 letter which demonstrates that "Arader made payment for certain consigned items, advised duPont that payment was pending for other consigned items, and provided duPont with a full inventory of consigned items in Mr. Arader's possession." (Id. at 13-14.) Plaintiff contends that "[s]urely there could not be probable cause to file and prosecute a false and baseless claim against Arader." (Id.) We, however, disagree for the reasons stated in our prior Memorandum Opinion, and also for the reasons discussed above.

We do note that contrary to Plaintiff's claim, the August 14, 1986 letter does not state that Plaintiff made payment to Du Pont for consigned goods, but rather, only that Plaintiff himself had been paid. (Pl.'s Amended Mot. to Amend Compl., Ex. A.) We are of the opinion, if anything, this letter and the inventory list of items that Plaintiff had in his possession indicate an on-going business relationship with Du Pont.[9] Thus, we find this argument to be without merit.[10]

## IV.   CONCLUSION

In conclusion, we find Plaintiff's proposed amendments to his Complaint to be futile in that they fail to state claims upon which relief can be granted. See In re Burlington Coat Factory

---

[9]In our prior Memorandum Opinion, we also determined that Plaintiff's Dragonetti Act claim failed for the additional reason that he had failed to sufficiently allege an improper purpose. See Arader, 2011 WL 4807924, at *9-10. Plaintiff asserts that we are "required at the motion to dismiss stage to draw the inference of improper purpose from the lack of probable cause." (Pl.'s Mot. Recons. at 7-8.) However, we have determined that Plaintiff did not lack probable cause to file the state court action. In addition, in our prior Memorandum Opinion, we determined that a court may, but need not, infer an improper purpose from a lack of probable cause, and declined to infer an improper purpose from a lack of probable cause. Buchleitner v. Perer, 794 A.2d 366, 377 (Pa. Super. Ct. 2002). We decline again to do so here.

[10]Because we find Plaintiff's proposed amendments to be futile, we need not address the other factors justifying a court decision to deny a party leave to amend- undue delay, bad faith, dilatory motive, and prejudice. See Shane, 213 F.3d at 115.

Sec. Litig., 114 F.3d at 1434.  We, thus, deny his Motion to Amend.  Moreover, we deny his Motion for Reconsideration because we do not find the need to correct a clear error of law or to prevent manifest injustice.  See Cohen, 869 F. Supp. at 321.

    An appropriate Order follows.